UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CLUB VISTA FINANCIAL SERVICES, LLC et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MASLON, EDELMAN, BORMAN & BRAND, LLP, <br><br> Defendant. | Case No. 2:10-cv-00264-GMN-RJJ <br><br> ORDER |

This case arises out of the alleged legal malpractice of a Minnesota law firm with respect to the purchase of Nevada real estate by its alleged Nevada client.  Pending before the Court is Defendant's Motion to Dismiss or in the Alternative to Transfer Venue (ECF No. 5).  For the reasons given herein, the Court denies the motion to dismiss but transfers venue to the District of Minnesota.

I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Gary D. Tharaldson and his companies, Plaintiffs Tharaldson Motels II, Inc. (a North Dakota Corporation) and Club Vista Financial Services, LLC (a Nevada limited liability company), have had long-standing relationships with non-party Bradley Scott and his non-party company, Scott Financial Corp. ("Scott").  Plaintiffs and Scott routinely engage in real estate investments together, with Scott providing the "underwriting, due diligence and feasibility analysis for all of the projects." (Compl. ¶ 2, ECF No. 1 Ex. 1).  Some entity, apparently Scott, although not specifically so alleged in the Complaint, hired Defendant law firm Maslon, Edelman, Borman & Brand ("Maslon") to represent Plaintiffs "in documenting and providing legal advice on each of these transactions." (*Id.*).  Plaintiffs allege legal malpractice and other

torts in connection with this representation, specifically with respect to work on the Manhattan Project and the Manhattan West Project ("the Project"). (*See id.* ¶¶ 38–45).

Plaintiffs sued Defendant in the Clark County District Court on five causes of action: (1) Professional Malpractice/Negligence; (2) Negligent Misrepresentation/Omission; (3) Breach of Fiduciary Duty; (4) Aiding and Abetting Breach of Fiduciary Duty; and (5) Aiding and Abetting Misrepresentations and Omissions.  Defendant removed based on diversity of citizenship and has now moved for dismissal for lack of personal jurisdiction or, alternatively, for transfer of venue to the District of Minnesota pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(2)

Before answering, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Removal to federal court does not operate as a waiver to this defense. *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929).  Personal jurisdiction over a nonresident defendant is established where a two-part test is satisfied.  First, there must be personal jurisdiction under the laws of the state where it is asserted. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994).  Second, the exercise of jurisdiction must satisfy due process. U.S. Const. amend XIV, § 1; *id.* at 1404–05.  Because Nevada's long arm statute by its terms permits personal jurisdiction over a defendant to the maximum extent allowed by the Nevada Constitution and the United States Constitution, Nev. Rev. Stat. § 14.065(1), the test in Nevada is essentially a single-step test under the Due Process Clause of the Fourteenth Amendment.

For a non-resident defendant, the assertion of jurisdiction is constitutionally proper under the Due Process Clause of the Fourteenth Amendment only where there are continuous and systematic contacts with the forum state (general jurisdiction), *Bauman v. DaimlerChrysler*

*Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009), or when there are sufficient minimal contacts with the forum state such that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice" (specific jurisdiction), *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The standard for specific jurisdiction has been restated using different verbiage. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Super. Court of Cal.*, 436 U.S. 84, 97–98 (1978))).

      **B.**      **Rule 12(b)(3)**

A party may also move for dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). When a court makes a determination of venue under Rule 12(b)(3), the well-pleaded allegations of the Complaint are taken as true, and any evidence submitted by the non-movant in opposition to the Rule 12(b)(3) motion is viewed in the light most favorable to the non-movant. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448–49 (5th Cir. 2008).  Whether venue lies in a particular district is governed by 28 U.S.C. § 1391.  Under the relevant section of that statute:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

>giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The three subsections of § 1391(a) are disjunctive; venue lies if any of these subsections is satisfied for a given district. Under 28 U.S.C. § 1406, a court determining that venue is improper has a choice between dismissal or transfer to a district where venue properly lies. *See* § 1406(a). Because it furthers the purpose of judicial economy, a case may be transferred under § 1406(a) even where venue is proper, but where there is no personal jurisdiction over the defendant in the transferor district. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).

Furthermore, under 28 U.S.C. § 1404, a district court may "in the interest of justice" transfer a case to any other district where venue lies "[f]or the convenience of parties and witnesses" even if venue is proper in the original district under § 1391. § 1404(a).

### III. ANALYSIS

Defendant argues that there is no general or specific personal jurisdiction over it in Nevada. Defendant asks the Court to dismiss rather than transfer venue. Defendant argues that justice does not require a transfer of venue because: (1) Plaintiffs have filed a duplicative complaint against Defendant in the District of Arizona; and (2) Plaintiffs have asserted duplicative third-party claims against Defendant in the District of North Dakota in a case where Plaintiff in the present case is a defendant in the North Dakota case.

#### A. Personal Jurisdiction

Maslon is a Minnesota limited liability partnership, with its principle place of business in Minnesota. (Heaberlin Decl. ¶ 1, ECF No. 5 at 18). Plaintiffs make no claim of continuous and systematic contacts with Nevada supporting general jurisdiction, but instead rely on specific

jurisdiction. (Compl. ¶¶ 12–13). Plaintiffs allege the following contacts with the State of Nevada: (1) Defendant represented Nevada Plaintiffs in a real estate financing transaction relating to property in Nevada; (2) Defendant drafted and reviewed loan documents and deeds of trust for the Nevada property; (3) the deeds of trust were recorded in Nevada; (4) the loan documents included forum and choice-of-law clauses in favor of Nevada; (5) Defendant['s representative] attended a lenders' meeting in Nevada concerning the Project; (6) "on information and belief," Defendant['s representative] attended "other meetings" in Nevada concerning the Project; and (7) Defendant participated in various electronic communications concerning the Project with Plaintiffs and various non-parties in Nevada. Defendant argues that it "performed all of the legal work at issue in its sole office located in Minneapolis, Minnesota" and that "Maslon's attorneys are not licensed and do not perform any substantial legal work in Nevada." (Mot. Dismiss 4:28–5:3, ECF No. 5). Defendant claims that Plaintiffs have only affirmatively alleged a single physical contact with Nevada—a meeting where nothing was consummated—and a single letter sent to a non-party in Nevada.

Plaintiffs allege Defendant was hired to represent them to assist Plaintiffs in connection with the Project. (Compl. ¶ 2). Defendant denies legal representation of Plaintiffs and refers to "the legal work at issue." Defendant attempts to support its conclusion that there is no personal jurisdiction over it in Nevada by denying that any of its lawyers are licensed in Nevada. This is a bit of misdirection. Defendant's lack of a license to practice law in Nevada does not negate Nevada's personal jurisdiction over Defendant. Far from disproving jurisdiction based on Defendant's alleged activities in Nevada, a lack of license to practice law in Nevada may actually serve to aggravate the malpractice claims against Defendant. Defendant's denial of having performed any legal work in Nevada is carefully worded: "Maslon's attorneys . . . do not perform any *substantial* legal work in Nevada." (Mot. Dismiss 5:2–3 (emphasis added)). This

appears calculated to comply with counsel's duty of candor to the Court, but at the same time it appears to betray that Defendant has performed *some* legal work in Nevada, otherwise Defendant would presumably claim that its attorneys have performed *no* legal work in Nevada, which would be a much more powerful argument against personal jurisdiction.  If Defendant did represent Plaintiffs or another entity with respect to a real estate transaction for property sited in Nevada, this could potentially constitute the unauthorized practice of law in Nevada.  But this is inapposite in the present motion.  The Court must simply ask whether the provision of legal advice to a Nevada client, to be relied upon in Nevada for a legal transaction to occur in Nevada, supports specific jurisdiction over a Minnesota law firm when the only contacts with Nevada were one or more meetings in Nevada and electronic communications between Minnesota and Nevada.  The Court finds that it does.

In *Streber v. Hunter*, the Fifth Circuit ruled that there was personal jurisdiction in a Texas court over a Louisiana attorney in a case alleging, inter alia, malpractice claims. 221 F.3d 701, 718 (5th Cir. 2000).  The attorney had "purposely availed" himself of Texas laws "when he gave tax advice that he knew would be received by a Texas client." *Id.*  In *Streber*:

> since at least some of the allegations forming the basis of this lawsuit arise out of [defendant's] contacts with Texas—much of [defendant's] alleged malpractice occurred during the 1993 mediation, which took place in Houston—the exercise of personal jurisdiction over [defendant] comported with traditional notions of fair play and substantial justice.

*Id.*  The Seventh Circuit has found personal jurisdiction to be proper in Illinois over Michigan attorneys who provided legal advice to Illinois clients, where the Michigan attorneys were alleged to have participated in "travel, letters, document revision and phone calls placed in Illinois" related to the alleged malpractice. *See Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1245 (7th Cir. 1990).  On the other hand, a district court within the Ninth Circuit has found no jurisdiction over defendant attorneys based purely on "three months of e-mail correspondence

with the plaintiffs' representative in Oregon . . . almost exclusively concerned with ascertaining mailing addresses and fax numbers . . . and otherwise contained mere acknowledgments of information received and brief status reports in answer to the plaintiffs' inquiries." *Mann v. St. Laurent*, 229 F. Supp. 2d 1133, 1136–37 (D. Or. 2002). The Fifth and Seventh Circuit cases are persuasive, and the facts of the present case more closely resemble the facts in those cases than they resemble the facts in Mann. The Ninth Circuit does not appear to have addressed personal jurisdiction over an attorney for long-distance services; however, it has held under a related set of facts that repeated services through electronic communications obviating the need for physical presence will support personal jurisdiction even where physical presence in the forum is rare. *See T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 314 (9th Cir. 1987) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1984)) (finding personal jurisdiction existed in California over a Kansas accountant who provided remote services to a California client and only visited California for seven-to-ten days a year). In summary, the courts of appeals have found personal jurisdiction to exist where advice or services are rendered across state lines to a forum plaintiff so that he may rely on it in the forum state and when the Plaintiff later alleges wrongdoing arising out of the service, so long as the service provider performs some part of the relevant work in the forum state. *Sugar*, 913 F.2d at 1245 (document revision); *Streber*, 221 F.3d at 718 (mediation); *Palka*, 823 F.2d at 314 ("rare" visits).

Here, Plaintiffs allege that Defendant gave actual legal advice to them to rely upon in Nevada. Plaintiffs must allege that at least some of this advice or legal work occurred in Nevada. Plaintiffs affirmatively allege that Defendant provided legal advice to Plaintiffs and drafted and reviewed documents related to the Project. (Compl. ¶ 1; *id. passim*). The allegations that Defendant provided any of this advice or work while the Defendant itself was in Nevada is scarce, but not nonexistent. Plaintiffs allege that "[a representative of] Maslon attended and

participated in a lenders' meeting in Clark County, Nevada, concerning the loan on the Manhattan West project." (Compl. ¶ 13). For the purposes of a motion to dismiss, this is to be believed. Nowhere else in the Complaint do plaintiffs allege that Defendant ever performed any legal work on behalf of Plaintiffs while Defendant was in Nevada. Personal jurisdiction therefore will lie if attending the lenders' meeting constituted legal work. The Court finds that it did. It is a reasonable inference from the Complaint that Defendant's representative would not have been in Nevada attending this meeting but for its legal duties to Plaintiff with respect to the Manhattan West project. This physical presence at a meeting in Nevada is a sufficient contact, and Defendant appears to admit one of its attorney's presence at this meeting. (Mot. Dismiss 3:3–4). The meeting was a part of the legal services allegedly provided by Defendant to Plaintiffs, and the present Complaint arises partially out of the alleged malpractice in that legal representation.

Nor does the assertion of personal jurisdiction over Defendant offend the Ninth Circuit's general test: (1) the defendant must have purposely availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990). The first two prongs have already been addressed. Defendant's representative attended a meeting in Nevada related to rendering legal services to the Nevada client, and the malpractice claim arises out of that representation.

The third prong is itself a seven-factor balancing test under which the Court must consider:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Id.* Defendant has minimally injected itself into the affairs of Nevada by visiting the state for a single meeting. Plaintiff alleges more meetings "on information and belief," but this is speculation. Defendant is not alleged to have signed any documents or closed any deals in Nevada. Defendant is not alleged to have entered into any fee agreement with Plaintiffs or Scott in Nevada. Defendant would not be unreasonably burdened by defending in Nevada, as it is a law firm that can efficiently employ and communicate with local counsel. Conflicts of law between Minnesota and Nevada are not of great concern, because the underlying claims of legal malpractice based on a conflict of interest and misrepresentations are likely not significantly different between the two jurisdictions. Neither Nevada nor Minnesota has a greater interest than the other in adjudicating the dispute—each state is home to one or more of the parties, and the subject matter of the dispute does not uniquely affect the interests of either state, although it could be argued that because Nevada has suffered to a much greater degree than most other states by the bursting of the housing bubble, it indeed has a stronger interest in adjudicating any alleged malfeasance related to real estate investments. Neither forum will be able to adjudicate the dispute more efficiently than the other. Plaintiff's interest in convenient and effective relief is best served by asserting personal jurisdiction over Defendant in Nevada. In the present case, there is an alternative forum because there is clearly personal jurisdiction over Defendant in Minnesota, and perhaps elsewhere. According to Defendant, Plaintiffs have already asserted the same third-party claims against Defendant in the District of North Dakota and filed an identical suit in the District of Arizona. On balance, it is reasonable to require Defendant to defend in Nevada. The Court therefore finds that the third prong of *Shute* is satisfied and there is personal jurisdiction over Defendant in Nevada in this case.

      **B.**    **Venue**

      In the alternative, Defendant has moved for a change of venue to the District of

Minnesota based on improper venue in the District of Nevada and for convenience of the parties and witnesses.  Section 1441(a) governs venue in removed actions, not § 1391, *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'"), and a party in a removed action may not challenge venue as being improper under § 1406, but may only challenge it as being more convenient elsewhere under § 1404, *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72–73 (2d Cir. 1998).

      The Court grants the motion to transfer venue under § 1404(a).  The sole Defendant resides in Minnesota, and Plaintiffs do not appear to deny that nearly all of the legal representation (the events giving rise to Plaintiffs' claims against Defendant) occurred there.  The evidence and witnesses as to the alleged conflicts of interest and misrepresentations are mostly in Minnesota.  Plaintiffs focus on their own actions and the actions of non-parties, but the focus of the analysis is on the actions giving rise to the claims, which in this case is the legal work performed by Defendant.  Apart from attending a single meeting in Nevada, all of the legal work appears to have been conducted in Minnesota.

## CONCLUSION

      IT IS HEREBY ORDERED that the Motion to Dismiss or in the Alternative to Transfer Venue (ECF No. 5) is GRANTED in part and DENIED in part.  The case is transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

      DATED this 29th day of July, 2010.

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE